NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGEL JET SERVICES, LLC, | Hon. Dennis M. Cavanaugh |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 10-cv-6459 (DMC)(MF) |
| BOROUGH OF WOODLAND PARK, | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| NORTH JERSEY MUNICIPAL EMPLOYEE BENEFITS FUND and AETNA INSURANCE COMPANY, | |
| Third-Party Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon the Motion of Third-Party Defendants North Jersey Municipal Employee Benefits Fund ("NJMEBF") and Aetna Insurance Company ("Aetna") (collectively "Third-Party Defendants") to Dismiss the Third-Party Complaint of Third-Party Plaintiff Borough of Woodland Park ("Borough") pursuant to FED. R. CIV. P. 12(b)(6). (ECF No.32). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Third-Party Defendants' Motion to Dismiss is **granted**.

1

I.   **BACKGROUND**[1]

A.   **Factual History**

Original Plaintiff Angel Jet Services, LLC ("AJS") initiated the underlying complaint against Borough for multiple causes to recover damages for unpaid services and equipment totaling $433,525 plus attorney's fees, costs, and all additional damages the court may deem proper.(ECF No. 1, Dec. 13, 2012). Borough has, in turn, named NJMEBF and Aetna as Third-Party Defendants for multiple causes to recover the same sum citing unpaid liabilities to their insured, Police Chief Robert Reda ("Chief Reda") and for failure to provide adequate information on the appeals process. (ECF No. 17). In 2008, Chief Reda was diagnosed with Stage IV metastic lung cancer after which he began to receive cancer treatment. Chief Reda a resident of West Paterson, New Jersey, received alternative treatment for his cancer at a clinic in Coeur d'Alene, Idaho, and routinely traveled between Idaho and New Jersey for such treatment. In early February 2009, while traveling aboard a commercial flight to receive care in Idaho, Chief Reda became severely ill. The flight landed in Seattle, Washington, where paramedics immediately began treating him at the airport. After this treatment successfully stabilized Chief Reda, he and his wife traveled by ground to Coeur d'Alene, Idaho.

On February 22, 2009, while on the same trip, Chief Reda was admitted to Kootenai Medical Center ("Kootenai") in Coeur d'Alene, Idaho, after presenting to the emergency room with critical issues related to his declining health. For a period of two (2) weeks, Chief Reda's condition

---

[1] The facts in the Background section have been taken from the parties' submissions. On this Motion to Dismiss, the Court will accept the factual allegations in the Third-Party Complaint as true and construe all facts in Plaintiffs' favor.

2

continued to worsen and he was admitted to the Intensive Care Unit at Kootenai, where medical staff described him as critically ill. Chief Reda and his treating physician at Kootenai discussed options for treatment and determined that it was medically necessary for him to receive more conventional treatment at the most appropriate and closest facility to his home, St. Joseph Wayne Hospital in New Jersey. Air ambulance transportation was then ordered by Chief Reda's treating physician because, according to the physician, Chief Reda was unable to return to New Jersey to receive treatment at St. Joseph Wayne Hospital via any other means. Chief Reda's treating physician at Kootenai expressed that, based on his medical knowledge and judgment, air ambulance transportation was Chief Reda's only option for a positive outcome to his treatment, as his condition had deteriorated significantly at that time.

On or about February 24, 2009, Chief Reda's family contacted AJS to arrange for the necessary air ambulance transportation. After being fully informed of the Base Rate, Mileage Rate and Additional Services, Chief Reda and his family attempted to obtain insurance coverage (preauthorization) for the air ambulance transportation through NJMEBF. At the time, Chief Reda was covered by the health plan offered by Third-Party Defendants as a condition of his employment with the Borough. NJMEBF denied authorization for the air ambulance transportation. Chief Reda's family immediately contacted Borough Mayor Pat Lepore ("Mayor Lepore") for help. On February 25, 2009, Mayor Lepore contacted AJS via email and expressly agreed, on behalf of and as Mayor of the Borough, to pay all costs for the air ambulance transportation for Chief Reda. Specifically, Mayor Lepore wrote:

(A)s Mayor of the Borough of Woodland Park, I am overriding any negative benefit determinations by Aetna in regards to the Air ambulance Transport on 02-25-09 from Kootenai Medical Center PCU, ID to St. Joseph Wayne Hospital, NJ for pt. Robert Reda Member

3

#BBLT76DA DOB 03/1311957. Also, if you can, send me a message with the cost of the transport. (ECF No. 1, Ex. A).

AJS's Rate Schedule was then quoted to Mayor Lepore over the telephone and, based on the promise of Mayor Lepore, and the belief that he had the authority as Mayor to speak on behalf of the Borough, AJS transported Chief Reda 2,135 miles from Idaho to New Jersey, and provided the necessary medical care. (ECF No. 1, Ex. B). After performing the authorized services, AJS submitted an invoice to Mayor Lepore and the Borough in accordance with the Rate Schedule for all services rendered to Chief Reda.

During a subsequent telephone call with AJS, Mayor Lepore, on behalf of the Borough, provided his "personal assurance one way or another that AJS would be compensated for the service." On or about June 18, 2009, AJS placed a follow-up call to Mayor Lepore inquiring about the status of payment and to advise that payment was due. During that call, and for the first time, Mayor Lepore stated to AJS that the Borough would be unable to pay for the services rendered to Chief Reda. As required by N.J.S.A. 59:1-1, et seq., on August 3, 2009, AJS provided the Borough with a written Notice of Claim relating to the services provided to Chief Reda and the promise made by Mayor Lepore, on behalf of the Borough, to pay. (ECF No.1, Ex. C). The Borough ultimately failed to pay AJS for any of the services rendered to Chief Reda and Mayor Lepore has not delivered on his promise to secure payment for same.

**B.    Procedural History**

Third-Party Defendants filed this Motion to Dismiss Borough's Third-Party Complaint for failure to state a claim for which relief can be granted on March 19, 2012. (ECF No. 32). Third-Party Defendants assert that the Borough is not being sued by AJS for the health insurance benefits

4

provided by Third-Party Defendants, but for the separate contractual agreement made to compensate AJS *directly* for its services, an agreement that Third-Party Defendants allege is apart and separate from any agreement they had with Chief Reda and the Borough. If the agreement underlying this Third-Party dispute is premised on a separate promise made by the Mayor on behalf of the Borough, then NJMEBF argues that FED. R. CIV. P. 12(b)(6) should apply as the borough bears full responsibility for promises made beyond the scope of the health insurance policy provided by NJMEBF, leaving there no claim against NJMEBF for which relief can be granted. Borough filed Opposition on April 11, 2012. (ECF No. 33). Third-Party Defendants filed their Reply on April 11, 2011. (ECF No. 34). The matter is now before this Court.

## II. STANDARD OF REVIEW

In deciding a motion under Rule 12(b)(6), the district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. To survive a motion to dismiss, the complaint must state a plausible claim. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Thus, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative

level." Twombly, 550 U.S. at 555.

### III. DISCUSSION

Borough asserts four claims under common law principles of contract law for two types of relief: (1) declaratory relief for violation of terms of the healthcare contract; and (2) a declaration by the Court stating that Aetna violated express and implies terms of the healthcare plan. All four claims (Counts I, II, III, and IV) are dismissed as to Third- Party Defendants for failure to state a claim for which relief can be granted.

#### 1. COUNTS I AND II[2]

In Counts I and II, Borough seeks declaratory relief for violation of terms of the healthcare contract. To support their claim for breach of contract, Borough states the conclusion, without providing proper factual basis, that Chief Reda was "entitled" to AJS services.

Borough's facts in support of this conclusion do not show that Chief Reda was entitled to receive this specific form of transportation as part of his insurance coverage. Borough states in the Third-Party Complaint that Chief Reda had an insurance policy that was in full effect with the Third Party Defendants. (Third-Party Compl. ¶ 6). Borough asserts that Chief Reda's treating

---

[2]Conspicuously absent from Borough's Third-Party Complaint and Opposition Brief is any explanation as to who ultimately authorized Chief Reda's flight. Borough acknowledges that Aetna denied authorization for the flight. Borough also states that Chief Reda was flown back to New Jersey on one of AJS's ambulatory jets on February 25, 2009. However, Borough's submissions to the Court do not speak to whether or not Mayor Lepore actually authorized this transportation for Chief Reda, after Chief Reda's initial request for pre-authorization was denied by Aetna. Nor does Borough acknowledge that the nature of the underlying complaint between AJS and Borough in this case, is for breach of a contract that AJS claims to have formed with Mayor Lepore in writing, and then again verbally via telephone. (Mot. Dis. Br. 6, 7). In fact, "Angel Jet is not making a claim for benefits under the health insurance plan, *they are seeking the enforcement of a separate contract with the brought* (emphasis added)." (Reply Br. 6).

physician in Idaho was of the opinion that "air ambulance transportation was Chief Reda's *only option* for returning to New Jersey," and "that Chief Reda's attempt to obtain preauthorization was denied by Third Party Defendants." (Id. ¶¶ 12, 15) (emphasis added). Borough goes further, arguing that Third Party Defendants *had an obligation* to cover the costs associated with the transport of Chief Reda from Idaho to New Jersey for necessary and required medical treatment. (Id. ¶ 20) (emphasis added). However, Borough fails to cite any factual support as to why this service was necessary or more importantly, why Third-Party Defendants were obligated to pay for AJS service. Without providing any other factual support for these conclusions, such as specific language from the Chief Reda's health insurance policy, indicating that Third-Party Defendant's were obligated to pay for these services, Borough's Third-Party Complaint fails to present facts that allow the Court to "infer more than the mere possibility of misconduct" or to conclude that Borough "is entitled to relief." Iqbal, 556 U.S. at 679.

Accordingly, Counts I and II of Third-Party Plaintiff's Complaint are dismissed.

2. **COUNTS III AND IV**

In Counts III and IV, Borough does not allege that Third-Party Defendants violated any express terms of the Health Insurance Agreement. Rather, Borough argues that Aetna's denial of Chief Reda's claim for AJS services violated Aetna's duty of good faith and fair dealing under New Jersey common law. It is well established under New Jersey law that "[e]very party to a contract ... is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005). While "a party's performance under a contract may breach ... [the] covenant [of good faith and fair dealing] even though that performance does not violate a

7

pertinent express term," Wilson v. Amerada Hess Corp., 168 N.J. 236, 245 (2001), "the duty of good faith and fair dealing cannot alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." DiCarlo v. St. Mary Hosp., 530 F.3d 255, 267 (3d Cir. 2008).

In the context of contracts that "vest[ ] unilateral discretion ... in one party," whether to fix a price, to order a quantity of goods, or to control "other conditional aspects of a contract," the New Jersey Supreme Court has explained, "the fact that a discretion-exercising party causes the dependent party to lose some or all of its anticipated benefit from the contract ... is insufficient to establish a breach of contract by failing to perform in good faith..." Wilson, 168 N.J. at 245-46. "A party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." Id. at 251. A plaintiff may be entitled to relief in an action under the covenant if the defendant acts with ill motives and without any legitimate purpose to destroy the plaintiff's reasonable expectations. However, bad motive or intention is essential, and an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive. Elliot & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 329 (3d Cir. 2006) (internal quotations and citations omitted). As these cases make clear, "a party does not breach the implied covenant of good faith and fair dealing merely because its decisions disadvantaged another party," thus a plaintiff cannot satisfy the "improper motive" element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the

plaintiff. Id.; see also, e.g., Wilson, 168 N.J. at 246, 251 (exercise of discretion for "ordinary business purposes" does not constitute improper motive, and "[w]ithout bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance").

 Here, Borough argues that Aetna violated its implied duties of good faith and fair dealing without claiming any improper motive or intent. However, it does not satisfy the improper motive element of a good faith performance claim for a plaintiff to allege merely that its contractual partner exercised the discretion expressly afforded to it under the agreement, and that this decision worked to the disadvantage of the complaining party. Stony Brook Constr. Co., Inc. v. College of New Jersey, 260-01, 2008 WL 2404174, 7 (App. Div. May 24, 2004). See Elliot & Frantz, 457 F.3d at 329; cf. Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 288 (3d Cir. 2000) (citing a party's collusion with third parties against its contractual partner as an example of improper motive); Boardwalk, 2009 WL 540675, at 8 (intent to injure contractual partner is an example of improper motive). Therefore, even the most favorable reading of Borough's allegations fails to suggest that Aetna exercised its discretion under the Healthcare Contract for an improper motive, and because "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive," Elliot & Frantz, 457 F.3d at 329. Accordingly, the Court will grant Third-Party Defendants' Motion to Dismiss Counts III and IV of the Complaint.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint is **granted** without prejudice. An appropriate Order accompanies this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date:       October 26, 2012
Orig.:      Clerk
cc:         Hon. Mark Falk, U.S.M.J.
            All Counsel of Record
            File